UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| AHMET DEMERELLI, | ) ) | |
| Plaintiff-Intervener | ) ) | |
| v. | ) ) | No. 4:04CV00846CAS |
| CONVERGYS CUSTOMER MANAGEMENT GROUP INC., | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION OF PLAINTIFF EEOC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.     INTRODUCTION

Plaintiff EEOC's Motion for Partial Summary Judgment should be denied.  There is no question that, in addition to Demirelli's excessive tardiness (102 in the 12 months prior to his dismissal), Demirelli also incurred two no-call/no shows and had no legal right to work in the United States for eight months of his eighteen month employment.  In the face of this after-acquired evidence, the EEOC suggests that neither this Court nor a jury could make a determination that this misconduct would have resulted in Demirelli's dismissal independent of the real reason for his termination – excessive tardiness.  The EEOC fails to propound any undisputed material facts in conformance with Rule 56(e) of the Federal Rules of Civil

Procedure to support its motion.[1]  The EEOC's motion demonstrates the numerous material issues of fact that remain to be decided before either this Court or a jury could determine whether Demirelli would have been terminated even if he had not been terminated for excessive tardiness.  The EEOC's motion should, therefore, be denied.

## II. RESPONSE TO "PLAINTIFF EEOC'S STATEMENT OF UNDISPUTED FACTS"[2]

1.      Admitted.

2.      Admitted.

3.      While the EEOC correctly summarized the general procedure for customer service representative scheduling practice, this practice was not followed during the entire term of Plaintiff's employment.  Demirelli received a fixed start time of 4:30 p.m. beginning at least on April 18, 2002.  After that date, Demirelli's start time did not change.  (Convergys Facts ¶ 66).  Convergys denies the materiality of this fact as Convergys does not intend to invoke the after-acquired evidence doctrine with respect to Demirelli's accrual of 102 tardies in the year prior to his termination.

4.      Admitted.

5.      Admitted.

6.      Convergys admits that Hill, Aldridge and Brookins testified as to their practices, but Convergys denies that their testimony speaks for the personal practices of each and every supervisor and manager at Convergys.

---

[1] The EEOC's Motion for Partial Summary Judgment was filed by Plaintiff EEOC with respect to Convergys' Amended Answer to Plaintiff EEOC's Complaint.  Plaintiff-Intervener Demirelli has filed no such motion and the pending motion does not relate to Convergys' Amended Answer to Plaintiff-Intervener's Complaint.

[2] Rather than burden the court with additional paper, Convergys incorporates by reference the Statement of Undisputed Facts contained in Convergys' Memorandum in Support.  Convergys cites to its Statement of Undisputed Facts as "Convergys Facts, ¶ __," and the EEOC's Statement of Facts as "EEOC Facts, ¶ ___."

7.    Admitted.

8.    Convergys admits that no other records reflecting Demirelli's work schedules were located other than for the period between April 22, 2002 through his termination on June 28, 2002, but denies the materiality of this fact as Convergys does not intend to invoke the after-acquired evidence doctrine with respect to Demirelli's accrual of 102 tardies in the year prior to his termination.  Demirelli admits he received a written warning on March 15, 2002 because he incurred a no-call/no-show.  (Convergys Facts ¶ 39).  Further, Demirelli's attendance records reflect that on May 19, 2002, (during the time period in which every time record was available for Demirelli) Demirelli incurred a second no-call/no-show.  (Convergys Facts ¶ 47).

9.    Convergys denies that the only way to determine when Demirelli was supposed to start work on any particular day was to look at his work schedules.  Although reviewing Demirelli's work schedules certainly was one way to determine Demirelli's scheduled start time at the beginning of his shift, Demirelli admits that after April 18, 2002 he received a fixed start time of 4:30 p.m.  (Convergys Facts ¶ 66).  Convergys denies the materiality of this fact as Convergys does not intend to invoke the after-acquired evidence doctrine with respect to Demirelli's accrual of 102 tardies in the year prior to his termination.

10.    Denied.  Demirelli reviewed the identification of the 102 tardies incurred by Demirelli on Exhibits 15 and 36 and verified that he was, in fact, tardy on those dates.  (Convergys Facts ¶ 48).  Further, Demirelli admits that from at least April 18, 2002 he had a fixed start time of 4:30 p.m., which renders a schedule unnecessary.  (Convergys Facts ¶ 66).  Therefore, the 17 tardies incurred after April 18, 2002 cannot be disputed.  And, a schedule is unnecessary to identify tardies incurred as a result of returning from a meal break late.  Demirelli admits that at all times during his employment with Convergys, he received a 30 minute meal

break.  (Convergys Facts ¶ 12).  In addition, Convergys' attendance policy specifically states that Agents will be considered tardy if they are more than 3 minutes late returning from their scheduled meal break.  (Convergys Facts ¶ 14).  Accordingly, any employee who takes a meal break longer than 33 minutes, regardless of the schedule, incurs a tardy.  (*Id.*)  Therefore, Demirelli's 65 lunch tardies remain undisputed.  (Convergys Facts ¶ 48 and Ex. 36 attached thereto).  Convergys denies the characterization of Tara Match's testimony by the EEOC that there is "no way to determine if he was on time or tardy."  Ms. Match specifically testified as follows;

> Q:  Is there any way that you know of that you can tell when this employee whose information is reflected in Exhibit 2 was scheduled to come to work on any particular day prior to April the 22nd, 2002?
> MS. JORDAN:  Object to the form of the question.  You can answer it, Tara.
> THE WITNESS:  No, not with out making assumptions.
> Q:  (By Ms. Harper)  Is there any way that you can tell what time this particular employee was scheduled to leave work on any day prior to April 22nd, 2002?
> A:  No, not without making assumptions.

(Deposition of Tara Match, excerpts attached hereto as Exhibit 1 and hereinafter referred to as "Match Depo." 44:14-45:1).

Ms. Match did not testify that there would be no way to determine *any* tardies.  Nevertheless, Convergys denies the materiality of this fact as Convergys does not intend to invoke the after-acquired evidence doctrine with respect to Demirelli's accrual of 102 tardies in the year prior to his termination.

11.    Denied, for the reasons stated above in response to EEOC Fact ¶ 10, as to any tardies incurred after April 18, 2002 or any of the 65 times Demirelli was tardy returning from his meal break.  And, even if Ms. Horstmann may have employed certain assumptions in creating deposition Exhibits 15 and 36, which describe and identify Demirelli's tardiness, Demirelli reviewed Ms. Horstmann's descriptions and verified their accuracy.  (Convergys Facts ¶ 48).

12.    Admitted, however Convergys denies the materiality of this fact as Convergys does not intend to invoke the after-acquired evidence doctrine with respect to Demirelli's accrual of 102 tardies in the year prior to his termination.

13.    Admitted, however Convergys denies the materiality of this fact as Convergys does not intend to invoke the after-acquired evidence doctrine with respect to Demirelli's accrual of 102 tardies in the year prior to his termination.

14.    Convergys admits that Demirelli received two pay raises during his employment with Convergys.  However, the EEOC's conclusory representation that the pay raises were a result of Demirelli's performance reviews lacks any support in fact.  Further, Convergys denies the materiality of this fact as Convergys does not intend to invoke the after-acquired evidence doctrine with respect to Demirelli's accrual of 102 tardies in the year prior to his termination.

15.    Admitted.

16.    Admitted

17.    Admitted.

18.    Admitted, however, Convergys denies the materiality of this fact as Convergys does not intend to invoke the after-acquired evidence doctrine with respect to Demirelli's accrual of 102 tardies in the year prior to his termination.

19-22.  These paragraphs should be stricken as they propound inadmissible hearsay and unauthenticated documents.  However, even if this document was authenticated, which it is not, it demonstrates that Convergys did not allow the employee to return to work after the accrual of the second no-call/no-show.  Further, paragraphs 20-22 are immaterial as Convergys does not intend to invoke the after-acquired evidence doctrine with respect to Demirelli's accrual of 102

tardies in the year prior to his termination.  Based on the EEOC's lack of authentication, Convergys denies the facts stated in paragraphs 19-22.[3]

23.  Admitted.

24.  Admitted.

25.  Convergys admits only as to the facts testified by Ms. Etheridge, specifically that Convergys was obligated to complete Section 3 of the I-9 form for employees whose employment authorization needs to be reverified.  (Deposition of Marsha Etheridge, excerpts of which are attached here as Exhibit 2 and hereinafter referred to as "Etheridge Depo." 43:15-18).

26.  Denied.  As stated in paragraph 25 of Plaintiff EEOC's facts, Demirelli was required to re-verify his work authorization after September 9, 2001.  (EEOC Facts ¶ 25).

27.  Admitted, because other than Demirelli, there have not been any other employees at Convergys in Hazelwood, Missouri that have ever held expiring work authorization.  (Etheridge Depo. 35:5-25).

28.  Denied.  Convergys did not have a "policy" to notify employees that they needed to reverify their employment authorization documents.  On the contrary, as Ms. Etheridge testified, "The intent is not that we have an obligation to provide a reminder to an employee … Our practice is to have processes in place to try to retain employees, and we're encouraged to do that, *but we have no obligation to remind an employee to provide us the documentation that they are*

---

[3]    Paragraphs 19 – 22 of the EEOC's Statement of Facts and its accompanying exhibits should be stricken.  The EEOC may not rely on conclusory assertions, inadmissible hearsay, and unauthenticated documents in its Motion for Partial Summary Judgment. *Mays v. H.G. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001) (in evaluating a summary judgment motion, court considers only responses that are supported by admissible evidence).  Exhibits J, K, L and P attached to Plaintiff's Response are unauthenticated and therefore cannot be considered in determining whether summary judgment should be granted.  As held by this Court in *Anderson v. Dillards, Inc.*, 109 F. Supp.2d 1116, 1121 (E.D. Mo. 2000), "to be considered by the court, documents must be authenticated by and attached to an affidavit the meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." Id.  (refusing to consider exhibits offered in opposition to motion for summary judgment that were not properly authenticated).  Because the EEOC fails to properly authenticate these records, it may not rely on them to defeat summary judgment and its arguments.

*legally required to provide us in order to continue to work for us.*" (Etheridge Depo. 69:7-70:13)(emphasis added).

29. Denied. Convergys' employment policy with respect to the eligibility for employment of individuals who hold expiring employment authorization documents reads:

> Alien employees may not be employed beyond the expiration date of the documents permitting them to work. If an individual cannot produce proof of an extension of the right to work, that individual's employment will be suspended or terminated.

(Ex. 2 to Etheridge Deposition, attached to EEOC's Motion as Ex. M).

30. Convergys states that its Immigration and Employment Policy speaks for itself, which is specifically quoted above in paragraph 29.

31. Admitted, with respect to Hazelwood, Missouri.

32. Denied. Whether an employee would be suspended or terminated in light of expired employment authorization is speculative and dependent on the individual circumstances of the employee. (Etheridge Depo. 57:21-25, 59:18-60:13).

33. Denied. The EEOC has mischaracterized Ms. Etheridge's testimony. Ms. Etheridge merely testified that Mr. Demirelli's lapsing employment authorization was missed due to human error. (Etheridge Depo. 40:16-41:20). It was not Convergys' policy or responsibility to ensure that Demirelli maintained valid employment authorization or remembered to apply for renewal of his employment authorization. (Etheridge Depo. 69:7-70:13).

34. Admitted.

35. Admitted. In further answer, however, when Demirelli's employment authorization card expired in September 2001, he did not obtain employment authorization again until April 5, 2002. Therefore, for the period of time after September 9, 2001 and before April 5, 2002, Demirelli was not legally authorized to work in the United States. (Deposition of Chester

Moyer, excerpts of which are attached here as Exhibit 3 and hereinafter referred to as "Moyer Depo." 41:3-18).

36.  Denied.  The EEOC's suggestion that Demirelli may have had employment authorization which simply was not filed with the USCIS because of a recordkeeping error is speculative and void of any factual basis.  Chester Moyer, the Officer in Charge for the St. Louis office of the USCIS  testified that any suggestion of additional work authorization was purely speculative.  (Moyer Depo. 43:1-8).  And, Demirelli admitted that he lacked employment authorization for approximately seven months, but could not recall exactly when he was actually without work authorization.  (Deposition of Ahmet Demirelli, excerpts of which are attached here as Exhibit 4 and hereinafter referred to as "Demirelli Depo."  163:19-164:23).  Further, Demirelli testified that he kept all of his immigration records because "You have to keep pretty good books with the INS" (Demirelli Depo. 165:22-166:12).  Despite this, the EEOC neither identifies nor propounds any such authenticated document that suggests that Demirelli held employment authorization beyond the dates identified by the USCIS.

In further responding to Plaintiff EEOC's motion Convergys states the following undisputed facts:

84.[4]    Convergys has terminated multiple employees who have incurred two no-call/no-shows during the same time period as Demirelli's termination and his accrual of the second no-call/no-show.  As the attached authenticated personnel records demonstrate, three employees were terminated for accruing only two no-call/no-shows, in the same time proximity as

---

[4] Convergys' numbering follows its last numbered fact in its Motion for Summary Judgment, and will hereinafter be referred to as "Convergys Facts ¶ ___."

Demirelli's dismissal.  (Etheridge Declaration, attached hereto as Exhibit 5, and Exhibits A-C attached thereto).

85.     Convergys has consistently terminated employees who fail to propound proof of work authorization within 72 hours of the beginning of their employment consistent with paragraph 2 of Convergys' Immigration and Employment Policy.  (Etheridge Depo. 24:12-25:10, Ex. 2 to M. Etheridge Depo. attached to Exhibit M of Plaintiff's Motion).

86.     Convergys also implemented a full-scale self audit of its personnel records to ensure that all of its employees in Hazelwood, Missouri maintained valid authorization to work at Convergys.  And, in the course of conducting the audit, Convergys also required all employees to reverify their employment eligibility and execute new I-9 forms.  (Etheridge Depo. 51:3-52:24).

### III.  ARGUMENT

The EEOC has moved this Court for summary judgment as to Convergys' after-acquired evidence affirmative defense.  Although it is undisputed that Demirelli was terminated for tardiness, after his dismissal Convergys discovered that he also incurred two no-call/no-shows and had no legal right to work for Convergys (let alone any U.S. employer) for eight months of his eighteen month employment.  The EEOC argues that the Court should strike Convergys' affirmative defense because, apparently, the EEOC disputes the accrual of the additional attendance violation and holds a spark of hope that Demirelli actually may have held employment authorization despite the unequivocal testimony from the USCIS concluding otherwise.  Under this framework, the EEOC suggests that there remain no issues of law or fact that require this issue to be considered by the Court or a jury.

Summary judgment is wholly inappropriate in this context. The EEOC has not established that it is entitled to prevail, as a matter of law, on Convergys' after-acquired evidence defense. Rather, the EEOC has merely suggested to the Court that Demirelli's misconduct was not sufficiently severe and disputes whether Convergys would have terminated Demirelli on those acts alone. This is not sufficient to entitle the EEOC to partial summary judgment. It is well settled that a Court should not grant a motion for summary judgment unless "all of the information before the court shows 'there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Ace Eye v. Fluor Corp.*, 952 F.Supp. 635, 637 (E.D.Mo. 1997)(*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The moving party has the burden to clearly establish the absence of any genuine issue of fact that is material to judgment in its favor. *City of Mount Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, (8th Cir. 1988). The burden does not shift to the non-moving party until the record, in fact, bears out that no genuine dispute exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Motions to strike affirmative defenses are generally disfavored" and ordinarily affirmative defenses "will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." *Johnson v. City of Elgin*, 2001 WL 199506, *1 (Feb. 28, 2001)(*denying* plaintiff's motion to strike defendant's after-acquired affirmative defense). Courts consistently refuse to strike the after-acquired evidence affirmative defense, deciding that the issue is most appropriately determined by the jury after liability has been determined. *See Red Deer v. Cherokee County, Iowa*, 183 F.R.D. 642, 648 (N.D. Iowa, 1999)(*stating*, "First, it is for the jury to decide whether Red Deer's "misconduct" in her prior employment was such that the County would not have hired her on those grounds alone; second, the jury must also decide whether Red Deer made *misrepresentations* on her application, and whether those

*misrepresentations,* irrespective of the seriousness of the "misconduct" they allegedly hid, were sufficiently serious in and of themselves that the County would not have hired her on that ground alone").  *See also Flores v. Buy Buy Baby, Inc.,* 118 F.Supp.2d 425, 432-33 (S.D.N.Y. 2000) (*denying* defendant's motion to strike claims for front pay and reinstatement because, "[t]here remain material issues of relevant fact as to whether BBB would have fired Flores solely on the basis of her falsified employment application"); *Blake-McIntosh v. Cadbury Beverages, Inc.,* 1999 WL 643661 (D.Conn. Aug. 10, 1999) (*stating*, "Where an issue of material fact exists regarding whether the plaintiff's actions were so egregious that the employer would have discharged her solely on this basis, district courts have denied summary judgment on after-acquired evidence grounds, and have left the issue for the jury to decide at the remedy stage if the plaintiff succeeds on proving liability."); *Hillman v. Hamilton College,* 1998 WL 166827, *10-11 (N.D.N.Y. Apr. 9, 1998) (*using* similar language); *Gaston v. Home Depot USA, Inc.*, 129 F.Supp.2d 1355, 1378 (S.D. Fla. 2001)(*granting* summary judgment as to liability and denying plaintiff's motion for summary judgment to strike after-acquired evidence affirmative defense); *Miller v. Beneficial Management Corporation*, 855 F.Supp. 691 (D. N.J. 1994)(*denying* plaintiff's motion for summary judgment as to after-acquired affirmative defense, *holding* that material issues of fact existed as to whether employer would have terminated employee for her misconduct).

>       **A.**    **Convergys Should Not be Deprived of Consideration of the After-Acquired Evidence Defense Merely Because the Information Was Available to, but Not Known by the Decisionmakers at the Time of Demirelli's Termination.**

The EEOC principally argues that Convergys should not be afforded consideration of the after-acquired evidence doctrine should this case proceed to trial because Demirelli's additional attendance violations and failure to maintain the right to work in the U.S. were "available" to

Convergys at the time of his dismissal.  The single case that the EEOC cites for this proposition, *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228 (11th Cir. 2004), does not hold that "evidence available to an employer at the time of a discharge is not after-acquired evidence" as the EEOC represents in its Memorandum.  In *Conroy* the case proceeded to trial, and only after a trial on the merits and a jury verdict in favor of the employer, the Court considered the after-acquired evidence defense.  The Eleventh Circuit then held that, although it was not "convinced" that the information constituted after-acquired evidence, it was not reversible error that the District Court allowed the jury to hear evidence of the post-termination investigation.  *Id.* at 1232.

Contrary to the EEOC's supposition, "After-acquired evidence has been defined as 'evidence of the employee's or applicant's misconduct or dishonesty which the employer did not know about at the time it acted adversely to the employee or applicant but which it discovered at some point prior to, or, more typically, during, subsequent legal proceedings.'"  *Ryder v. Westinghouse Elec. Corp.*, 879 F.Supp. 534, 537 (W.D.Pa. 1995) (*citing Mardell v. Harleysville Life Insurance Co.*, 31 F.3d 1221, 1222 (3d Cir. 1994).  This definition does not preclude information that was available yet unknown to the Defendant at the time the adverse employment action was taken.

The EEOC's interpretation of *Conroy's* dicta is contrary to the clear weight of authority.  It is well established that the after-acquired evidence doctrine is available to defendants even where the information relied on was available to the Defendant at the time of discharge.  For example, in *Summers v. State Farm Mutual Automobile Ins. Co*., 864 F.2d 700 (10th Cir. 1988), the after-acquired evidence at issue were records that were in State Farm's possession when it terminated the plaintiff, but which it had not thoroughly reviewed.  *Id*. at 703.  In that case, State

Farm had examined some of the plaintiff's records while he was still employed and determined that he had falsified some of the records. State Farm later terminated the Plaintiff for other reasons, and after the Plaintiff instituted the lawsuit, State Farm, "when preparing for trial, made a thorough examination of records prepared by [Plaintiff] and discovered over 150 instances where [Plaintiff] had falsified records…" The Court held that these records, which had been available to the employer at the time of its discharge, constituted after-acquired evidence. *Id*. at 708. *See also Castle v. Rubin*, 78 F.3d 654, 656 (D.C. Cir. 1996) (*allowing* the after-acquired evidence affirmative defense where misconduct discovered post-termination was plagiarism in preparing training materials for employer; employer had possession and control of materials and so could have discovered the plagiarism); *Miller v. AT & T Corp.*, 250 F.3d 820, 836-7 (4th Cir. 2001) (*holding* that terminated employees absences constituted after acquired-evidence where employer had not determined if they were FMLA eligible or not at the time of discharge).

Consequently, in considering Demirelli's additional violations of Convergys' attendance policy and his lack of a legal right to work for a U.S. employer, the fact that documents were available to Convergys when Demirelli was terminated does not preclude the application of the after-acquired evidence doctrine.

**B.    Fact Issues Remain As to Whether Demirelli's Two No-Call/No-Shows Would Have Resulted in His Termination**

While the undisputed facts demonstrate that (1) Demirelli incurred two no-call/no-shows during his employment with Convergys (Convergys Facts ¶¶ 39, 47), (2) that Convergys' attendance policies call for termination upon accrual of two no-call/no-shows (Convergys Facts ¶ 16) and (3) that Demirelli was terminated for tardiness, not accrual of two no-call/no-shows (Convergys Facts ¶ 57), whether Convergys would have terminated Demirelli had it known of his accrual of a second no-call/no-show is, at best, an issue of fact that is in dispute.

As demonstrated by the attached Declaration of Marsha Etheridge, contrary to the EEOC's conclusory and unsupported allegation, Convergys has consistently terminated employees upon the accrual of two no-call/no-shows.  Convergys Facts ¶ 84.  Further, Marlon Mitchell, Demirelli's former supervisor, testified that its policy with respect to no-call/no-shows was strictly enforced.  Convergys Facts ¶ 16.  As the EEOC has not met its burden, summary judgment must be denied.

The only "fact" that the EEOC propounds to suggest that Demirelli would not have been terminated is an unauthenticated document which describes an employee who apparently incurred seven no-call/no-shows.[5]  EEOC Facts ¶ 19.  This document cannot be the basis of an undisputed fact as it is not authenticated.  *Anderson v. Dillards, Inc.*, 109 F. Supp.2d 1116, 1121 (E.D. Mo. 2000)(*stating*, "to be considered by the court, documents must be authenticated by and attached to an affidavit the meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").

In attempting to persuade this Court to issue summary judgment, the EEOC curiously argues that Convergys' evidence of Demirelli's second no-call/no-show is not "evidence" and that "Convergys cannot show that it would have fired Demirelli" for accruing two no-call/no-shows.  EEOC Memorandum p. 7.[6]  As the EEOC articulated, however, "The moving party bears the burden of proving that the facts are undisputed."  EEOC's Memorandum, p. 2 (*citing Bradley v. Widnall*, 232 F.3d 626, 630 (8th Cir. 2000)).  At this stage of the proceedings, Convergys does

---

[5] Notably, however, the no-call/no-shows on this unauthenticated document suggest that only one of the no-call/no-shows occurred before the employee's last date of work, as the employee left and never returned to work over the holidays.

[6] On the contrary, Demirelli's two no-call/no-shows cannot be disputed.  Demirelli admits that in March 2002 Marlon Mitchell issued him a written warning for one no-call/no-show. (Convergys Facts ¶ 39).  And, Demirelli incurred his second no-call/no show on May 19, 2002, during the time period the EEOC admits that Convergys had all time records, including Demirelli's schedule (Convergys Facts ¶ 47).

not bear the burden on showing that it would have fired Demirelli for accruing two no-call/no-shows.  The EEOC has merely *disputed* whether Demirelli's infractions would have resulted in his termination and whether he incurred the infractions in the first place.  The EEOC, however, must propound facts to show that there is *no* issue of material fact in order for summary judgment to be granted. *McDermott Intern., Inc. v. Wilander,* 498 U.S. 337 (1991).  The EEOC fails to meet its burden.  Accordingly, summary judgment is not appropriate as it remains an issue of disputed fact as to whether Demirelli would have been terminated had Convergys known of Demirelli's second no-call/no-show prior to his dismissal.

      **C.**    **Summary Judgment as to the Applicability of yhe After-Acquired Evidence Doctrine to Demirelli's Illegal Employment and Lack of Work Authorization Should be Denied.**

The EEOC suggests that the after-acquired evidence doctrine should not apply to Demirelli's unauthorized employment for three reasons:  1) the information was not after-acquired, 2) Convergys had "unclean hands" either because it did not remind Demirelli to renew his work permit or because it permitted him to keep working despite his lack of a legal right to work in the United States; or 3) Demirelli's conduct was not sufficiently severe to result in his dismissal, either alone or because Convergys had not terminated other employees in Hazelwood for the same reason.  All arguments fail to support the EEOC's Motion for Partial Summary Judgment.

      **1.**    **This Court Should Not Strike the After Acquired Evidence Affirmative Defense Based Upon the Fact that it Possessed a Copy of Demirelli's I-9 Form.**

The EEOC does not dispute that Convergys was unaware of Demirelli's unauthorized employment at the time of the employment decision.  Instead, it suggests that because Convergys possessed an I-9 form identifying an expiration date, it knew that Demirelli failed to renew his

employment authorization and was working illegally. The EEOC, however, has no evidence to show that Convergys knew that Demirelli was working illegally. Further, as discussed in more detail above, the mere availability of information that would have made it possible for Convergys to determine that Demirelli was working illegally is insufficient to deprive Convergys of the after-acquired evidence affirmative defense. *See Miller v. AT & T Corp.*, 250 F.3d 820, 836-7 (4th Cir. 2001); *Castle v. Rubin*, 78 F.3d 654,656 (D.C. Cir. 1996); *Summers v. State Farm Mutual Automobile Ins. Co.*, 864 F.2d 700 (10th Cir. 1988).

    **2.     The "Clean Hands" Doctrine Does Not Apply to Convergys.**

    The EEOC further suggests that the after-acquired evidence doctrine should not be considered in the context of Demirelli's unauthorized employment because Convergys had "unclean hands." First, Convergys did not engage in misconduct. It was only human error, not misconduct, that caused Convergys to allow Demirelli to continue his employment despite the fact that he had no legal right to work in the United States at the time. Convergys' Response to EEOC Fact ¶ 33.

    Second, the doctrine of unclean hands does not apply to Convergys' after-acquired evidence affirmative defense. The "clean hands doctrine" requires that a party *coming into a court of equity* must have acted in good faith as to the subject matter of the lawsuit. *Crawford v. Detring,* 965 S.W.2d 188, 193 (Mo.App. 1998). Stated another way, it is Demirelli, as the party requesting equitable relief from this Court, that must enter this Court with clean hands.

    The EEOC contorts this doctrine to suggest that Convergys cannot apply the after-acquired evidence affirmative defense unless it sits in equity with clean hands. *Cf.* 27A AM. JUR. 2D EQUITY § 126 (*stating*, "The clean-hands maxim is subject to reasonable limitations. Generally, it may be invoked *only to prevent affirmative equitable relief*.") (emphasis added).

The EEOC's position lacks legal foundation. In sole support of this argument, the EEOC relies upon *Rivera v. NIBCO*, 364 F.3d 1057 (9th Cir. 2004), to suggest that Convergys' continued employment of Demirelli after his work authorization expired precludes it from asserting the affirmative defense of after-acquired evidence. *Rivera v. NIBCO* did not, however, hold that the after-acquired evidence affirmative defense was barred as to employers who employed unauthorized workers. On the contrary, the Ninth Circuit merely affirmed a magistrate's protective order precluding the employer from engaging in discovery into the plaintiffs' immigration status. *Id.* at 1074-5. In so affirming, the Ninth Circuit stated "We need not decide the *Hoffman* question in this case, however. Regardless of whether *Hoffman* applies in Title VII cases, it is clear that it does not *require* a district court to allow the discovery sought here." *Id.* at 1069. The Court in *Rivera* did not, however, hold that the such information would be inapplicable to the after-acquired evidence defense, instead it rested its decision to affirm the protective order on the basis that the defendant was on a fishing expedition. *Id.* at 1072. Significantly, neither *Rivera*, nor any other decision cited by the EEOC, hold that an employer's "unclean" hands precluded the availability of the after-acquired evidence affirmative defense.

Even if *Rivera* propounded such a holding, which it did not, the facts in *Rivera* are distinguishable and the analysis is inapplicable to this case. Unlike the scenario contemplated by *Rivera*, Convergys verifies the employment eligibility of its employees upon hire, and requires its new employees to verify their employment eligibility within 72 hours of beginning work. Convergys Facts ¶ 85. Convergys has refused to allow employees who fail to produce proof of employment eligibility within 72 hours of beginning employment to continue working. Convergys Facts ¶ 85. Moreover, Convergys even conducts self-audits to ensure that employees working in Hazelwood, Missouri possess valid employment authorization to permit them to

work.  Convergys Facts ¶ 86.  Human error with respect to Demirelli was not an act of "unclean hands" but rather human error which, in this case, benefited Demirelli because it allowed him to continue working longer than he was permitted by law.  Convergys' error does not deprive it of the right to invoke the after-acquired evidence doctrine.  *See Summers v. State Farm Mutual Automobile Ins. Co.*, 864 F.2d 700 (10th Cir. 1988); *Castle v. Rubin*, 78 F.3d 654,656 (DC Cir 1996) (*allowing* after-acquired evidence affirmative defense to consider employee's plagiarism, even though the employer failed to discover the plagiarism while the employee was working for the company).

The EEOC further suggests that Demirelli may have held employment authorization had Convergys reminded Demirelli that his employment authorization was about to expire.  It was not Convergys' burden to ensure that Demirelli renewed his employment authorization – neither under Federal law nor according to Convergys' policy.  *See* Convergys' Response to EEOC Fact ¶ 28.  Even if it was, based on Demirelli's testimony, it was immaterial.  Demirelli testified that he kept his records in careful order, and he claims that he timely filed for renewal of his work authorization (without reminder from Convergys) but was faced with a seven month delay due to post 9/11 processing delays – all factors obviously out of Convergys' control.  *See* EEOC Facts and Convergys' Response to EEOC Facts ¶¶ 33-36.  Demirelli concedes that for a period of time he lacked employment authorization.  Convergys' Response to EEOC Fact ¶ 36.  Consistent with that, the USCIS testified that there is no indication that he ever held employment authorization, and the EEOC has raised no facts to dispute this.  *Id.*

    **3.**    **There Remains a Genuine Issue of Material Fact As To Whether Demirelli Would Have Been Terminated Had Convergys Known that He Was Not Legally Permitted To Work in The United States between September 9, 2001 and April 5, 2002.**

While it is undisputed that Demirelli had no legal right to work for Convergys or any other U.S. employer for eight months of his eighteen month employment, the EEOC trivializes the significance of Demirelli's misconduct and suggests that it should not be a basis to consider the after-acquired evidence doctrine. The EEOC, however, accomplishes nothing more than demonstrating that a material fact exists as to whether Demirelli would have been terminated had Convergys known that his employment authorization expired. [7]

The EEOC's suggestion that the after-acquired evidence doctrine should not apply because Convergys has not previously terminated an employee whose employment authorization has expired likewise is void of any legal basis. In fact, the EEOC has previously concluded to the contrary. The EEOC's enforcement guidance provides its own suggested standard for considering the applicability of the after-acquired evidence affirmative defense if no comparable past incidents are discovered:

> If no comparable past incidents are discovered, other criteria may be used in ascertaining whether the misconduct would have prompted the employer to take the adverse action. Such inquires may include whether: 1) the misconduct is criminal in nature, (*e.g.* embezzlement, fraud, assault or theft); 2) the employee's behavior compromised the integrity of the employer's business (divulgence of trade secrets, security or confidential information); or 3) the nature of the employee's misconduct was such that the adverse action appears reasonable and justifiable.

ENFORCEMENT GUIDANCE ON AFTER-ACQUIRED EVIDENCE, EMPLOYMENT DISCRIMINATION REPORT (BNA), vol. 5 No. 23 at 686 (Dec. 20, 1995). Applying the EEOC's own articulated

---

[7] Whether this Court determines that the affirmative defense of after-acquired evidence applies to Demirelli's unauthorized employment, it remains undisputed that Demirelli worked without employment authorization for eight months of his eighteen month employment with Convergys, and that Demirelli lacks employment authorization today. As such, Demirelli was not "qualified" under the ADA for that period of time, nor is he eligible for reinstatement, frontpay or backpay according to the clear authority of *Hoffmann Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) and *Egbuna v. Time-Life Libraries, Inc.*, 153 F.3d 184, 486 (4th Cir. 1998)(*holding* that plaintiff who lacked employment authorization at the time of the employment action was not qualified as a matter of law and therefore could not meet its *prima facie* burden).

standards, there can be no dispute that the after-acquired evidence doctrine *should* apply to Demirelli's illegal employment. First, Demirelli was not legally authorized to work, and therefore his employment was not lawful – satisfying the first element of the EEOC's analysis. Converygs Facts ¶¶ 52, 54. Second, Demirelli's continued employment with Convergys despite the expiration of his legal authorization to work for Convergys, put Convergys at risk for possible penalties for non-compliance with federal immigration laws. EEOC Facts ¶ 34. Third, the EEOC cannot dispute that Demirelli's continued employment with Convergys despite his legal right to do so was "such that [termination] appears reasonable and justifiable." EEOC ENFORCEMENT GUIDANCE at 686.

The U.S. Supreme Court identified employment without work authorization as "misconduct that renders an underlying employment relationship illegal under explicit provisions of federal law." *Hoffman Plastic Compounds, Inc. v. NLRB*, 595 U.S. 137, 146 (2002). The Supreme Court further articulated the mandate that employers terminate employees upon discovery that they lack work authorization. "[I]f an employer unknowingly hires an unauthorized alien, or if the alien becomes unauthorized while employed, the employer is compelled to discharge the worker upon discovery of the worker's undocumented status." *Id.* at 147. Under this framework, the Supreme Court has reached far beyond *McKennon* and completely excluded the remedy of backpay.

> Under the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit Congressional policies… The Board asks that we overlook this fact and allow it to award backpay to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud. We find, however, that awarding backpay to illegal aliens runs counter to the policies underlying IRCA.

*Id.* at 148-9. Like the Board in *Hoffman Plastics*, the EEOC suggests that this Court determine that Demirelli's misconduct was not so severe to warrant a conclusion that he should be terminated.  Pursuant to *Hoffman Plastic*, there can be no foundation in law to make such a finding.  Instead of excusing Demirelli's unlawful continuation of employment, this Court should allow a jury to determine its significance.  *Red Deer v. Cherokee County, Iowa*, 183 F.R.D. 642, 648 (N.D.Iowa 1999)(*stating*, "[I]it is for the jury to decide" whether employee's misconduct was sufficiently serious.")

## IV.  CONCLUSION

The EEOC has not met its burden of showing that there are no genuine issues of material fact that remain and that Convergys' affirmative defense of after-acquired evidence fails as a mater of law.  Rather, there is a factual dispute as to whether Demirelli's two no-call/no-shows and his failure to maintain a legal right to work in the United States would have resulted in his dismissal had Convergys known at the time of his employment.  WHEREFORE, for the foregoing reasons, Defendant Convergys Customer Management Group Inc. respectfully requests that this Court DENY Plaintiff EEOC's Motion for Partial Summary Judgment.

Respectfully submitted,

THOMPSON COBURN LLP


By   /s/  Laura M. Jordan
     Mary M. Bonacorsi, #2669
     Laura M. Jordan, #101022
     One U.S. Bank Plaza
     St. Louis, Missouri  63101
     314-552-6000
     FAX 314-552-7000

Attorneys for Defendant, Convergys Customer
Management Group Inc.

3234774                            21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Memorandum In Opposition of Plaintiff EEOC's Motion for Partial Summary Judgment was served electronically with the Clerk of the Court this 31st day of October, 2005 to be served by operation of the Court's electronic filing system upon Barbara Seeley, Equal Employment Opportunity Commission 1222 Spruce Street, Room 8.100, St. Louis, MO  63103 and to Michael Fagras, Attorney for Ahmet Demerelli, 4700 Mexico Road, St. Peters, MO  63304.

_____/s/ Laura M. Jordan_____